*306
 
 ROGERS, Justice.
 

 On March 3, 1923, before a notary public for the parish of Orleans, Pierre C. Lorio, owner of the Lower Eimer Plantation in the parish of Iberville, executed a chattel mortgage in favor of William L. Clark, Jr., to secure an indebtedness of $6,500. The chattel mortgage covered twenty-two mules, certain agricultural implements, vehicles, pumps, engines, boilers, syphons, and 200 feet of suction pipe located on the mortgagor’s plantation.
 

 Subsequently, to wit, on August 15, 1923, before a notary public for the parish of Iberville, Pierre C. Lorio executed a mortgage on the Lower Eimer Plantation to secure an indebtedness of $37,800 due the Bank of White Castle.
 

 On May 20, 1926, the Bank of White Castle foreclosed-its mortgage, and the sale of the mortgaged property was advertised for July 10, 1926. Two days later, namely, on May 22, 1926, William M. Clark, Jr., foreclosed his chattel mortgage, and the sale of the mortgaged chattels was advertised for June 26, 1926.
 

 On June 25,1926, the Bank of White Castle filed suit in the Eighteenth district court to enjoin William M. Clark, Jr., and the sheriff of the parish of Iberville, from selling the property covered by the chattel mortgage on June 26, 1926, and a restraining order was granted staying the sale. On the trial of the rule for a preliminary injunction the trial judge sustained an exception of no cause of action and dismissed the suit. From this judgment the Bank of White Castle appealed. Pending a hearing on the appeal the appellant bank went into liquidation and the appellee Clark died. By proper proceedings the liquidator of the bank and the executor of Clark have been made parties to the suit.
 

 The question for decision arises on the face of the pleadings, which show that prior to March 3, 1923, the movables described in the chattel mortgage executed on that date were immovable by destination, because they had been placed on the plantation by its owner for its improvement and cultivation.
 

 Appellant contends that the chattel mortgage is invalid, because the movables described therein constituted a part of the plantation and could not be mortgaged or sold separately from the realty. On the other hand, appellee contends that the effect of the execution and recordation of the chattel mortgage was to deimmobilize the movables and that the recorded instrument is binding upon a subsequent purchaser or mortgagee.
 

 The chattel mortgage held by the appellee was granted and accepted under the terms of Act No. .198 of 1918, providing for the mortgaging of movable property. The first section of the statute describes the kinds or classes of movable property which are subject to its provisions. Among those enumerated are, “live stock, all kinds of vehicles and the equipment, accessories and parts thereunto belonging, all kinds of machinery” and “farm implements, tractors,” etc. The same section of the statute declares that it shall be lawful to mortgage the movables mentioned “for debts or for money loaned or to secure future advances, or to guarantee the performance of any other contractual obligations, by complying with the provisions of this Act.” And section 4 of the statute provides that: “Every
 
 *308
 
 mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, which filing shall be notice to all parties of the existence of such mortgage, and said lien shall be superior in rank to any privilege or lien arising subsequently thereto.”
 

 The contention of the appellant, if correct, would defeat the purpose of Act No.' 198 of 1918. The statute is a useless piece of legislation, if since its enactment movables placed on a tract of land by its owner for its service and improvement are not subject to mortgage, or if a mortgage on detached movables is destroyed by their subsequent attachment by the mortgagor to a tract of land owned by him.
 

 Article 468 of the Civil Code provides that: “Things which the owner of a tract of land has placed upon it for its service and improvement, are immovable by destination. * * * All such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination.” • 1
 

 “There are two, and only two, ways in which an immovable by destination may be created:
 

 “ ‘(1) Without any physical attachment to the fundus, but merely by the dedication of the movable to the service of the fundus. See Civil Code Louisiana, art. 46S.
 

 “ ‘(2) By means of a physical attachment affixing the movable permanently — a perpetuelle demeure. See Civil Code La., last paragraph of article 468.’
 

 “The above is an extract from Plainol, Droit Civil (Paris Ed. 1904) vol. 1, p. 703.
 

 “These two kinds of immovables by destination are plainly shown by Civil Code Louisiana, art. 468 (459), in which instances of both kinds are given.” Morton Trust Co. v. American Salt Co. (C. C.) 149 F. 540, as quoted in Scovel v. Shadyside Co., 137 La. pages 924, 925, 69 So. 745, 747, Ann. Cas. 1917B, 178.
 

 It would seem to be clear that there is no conflict between the legislative act and the codal article, at least so far as they cover those movables which without any physical attachment, but merely by their dedication by the owner to the service of his land, have become or may become immovables by destination.
 

 If the movables have been mortgaged before they are placed on the land by the owner, they can never become immobilized so as to defeat the rights of the mortgagee. If the movables have been immobilized by the owner of the land, he may subsequently mobilize them by granting a mortgage thereon “for debts or for money loaned or to secure future advances, or to guarantee the performance of any contractual obligations” by complying with the terms of the chattel mortgage statute. Otherwise, a landowner desiring to mortgage his immobilized chattels for any of the purposes set forth in the statute would be subjected to the inconvenience and expense of temporarily removing from his land the chattels he desired to deimmobolize and mortgage.
 

 In the case of Caldwell v. Laurel Grove Co., 175 La. 928, 144 So. 718, after reviewing the entire jurisprudence of the state relative to the effect of the vendor’s lien on movables which have become attached to the realty, we held, as shown by the second paragraph of the syllabus, that: “Where thing sold can
 
 *310
 
 be identified and reclaimed without materially injuring structure to which it is attached, vendor’s lien is enforceable.” We think the legal principle announced in that ease is applicable to the present case.
 

 While the mere change of mind on the part bf the landowner cannot of itself alter the status of movables which have become immobilized by destination, unless his change of mind be accompanied by separation and detachment of the movables from the land, in view of the provisions of the chattel mortgage act, we see no reason why the intention of the landowner to deimmobilize the movables cannot be manifested by the execution and recordation of a mortgage covering the movables. The execution and recordation of the chattel mortgage, indicating the landowner's intention and constituting his overt act, are in themselves sufficient notice to a subsequent purchaser or mortgagee dealing with the mortgaged movables or with the land on which they are located.
 

 Appellant argues that the intent of the legislature in adopting Act No. .198 of 1918 was to permit only movables immobilized by destination to be mortgaged as provided by Act No. 176 of 1914. The argument is untenable. Act No. 176 of 1914 is a special statute providing for the issuance of bonds on rural real estate and the movables forming part of the real estate and securing the same by mortgage and chattel mortgage on the property affected. The statute is complete in it•■self and required no supplementary legislation to make it operative. On the other hand, Act No. 198 of 1918 is a general statute granting the right to mortgage movables for debts, money loaned or to be loaned, or to guarantee the performance, of other contractual obligations, and providing the method of executing, recording and enforcing such mortgages.
 

 Appellant also argues that his contention is supported by the provisions of Act No. 166 of 1932. That statute provides that whenever any movables incumbered by a mortgage granted under the provisions of Act No. 198 of 1918 shall be moved to and located upon any immovable or installed therein or thereon in such a manner as to become immobilized by nature or by destination, the movables shall retain their original character and the chattel mortgage shall not be impaired or affected by the sale or mortgage of the immovable.
 

 As we understand it, appellant’s deduction from the existence of Act No. .166 of 1932 is that prior to its adoption the immobilization by destination of mortgaged chattels destroyed the mortgage. And hence appellant argues that such being the case, no mortgage could have been legally placed on chattels occupying the status of immovables by destination.
 

 If appellant’s deduction and argument be correct, Act No. 198 of 1918 was for a period of fourteen years wholly useless for the purpose for which it was enacted, namely, to permit the mortgaging of live stock, agricultural implements, farming machinery, and vehicles, tractors and other movables placed on immovable property by the owner for its service and improvement. But, in our opinion, appellant’s deduction and argument are not correct. They entirely overlook the presumption against useless and meaningless legislation. Act No. 19S of 1918 was enacted for the purpose of authorizing the granting, recording, and enforcing of chattel mortgages, and it
 
 *312
 
 must be presumed that it was tbe legislative intent that it would be adequate for that purpose. Every legislative act is enacted for the purpose of making a change in the law or for the purpose of better declaring the law. There is nothing in the provisions of Act No. 166 of 1932 which professes to amend or alter the provisions of Act No. 198 of 1918. The later statute obviously has no other purpose than to better declare the law as it existed under the former statute.
 

 Appellant also argues that even if the chattel mortgage be valid it is ineffective as against third persons, because there is nothing on the face of the record to show that it was recorded as required by law. The argument cannot prevail. In the absence of any showing to the contrary in appellant’s petition attacking the chattel mqrtgage, 'the presumption is that the notary public before whom the mortgage was executed performed his duty by causing the instrument to be properly recorded.
 

 For the reasons assigned, the judgment appealed from is affirmed, at the appellant’s cost.
 

 O’NIELL, O. J., concurs in the decree.