## LIQUID CARBONIC CORPORATION v. LEGER et al.*

### No. 1598.

Court of Appeal of Louisiana.
First Circuit.

June 30, 1936.

*Rehearing denied July 20, 1936. Writ of error refused Oct. 6, 1936.

Lawrence B. Sandoz, of Opelousas, for appellant.

Pugh & Buatt, of Crowley, for appellee.

DORE, Judge.

The plaintiff sold to Oscar Leger a certain soda fountain, together with all accessories, and, at the time of the sale, retained a vendor's lien, and the purchaser granted a chattel mortgage to secure the unpaid part of the purchase price. This sale and chattel mortgage act was promptly recorded prior to the installation of the soda ·fountain in the drug store operated by Leger. Thereafter the lessor of Leger brought suit against him for past-due rent, praying for a writ of provisional seizure. There was judgment against Leger as prayed for, with the recognition of the lessor's privilege. Thereafter a writ of fieri facias was issued, and all of the property as contained in the drug store was seized and advertised to be sold. All of the property seized was appraised by the intervener and third opponent and another druggist, and at the sale the sheriff sold the same in bulk or in globo. At the sale, in accordance with law, the sheriff read the certificate of mortgage, and upon which the chattel mortgage of the plaintiff was reported. The procès verbal clearly states that the sheriff made known to the prospective purchasers that the same was to be sold "subject to all mortgages and liens" in accordance with the certificate of mortgage. His deed of adjudication further sets forth that the property was sold subject to the mortgages with which the property was burdened and conditional that the purchaser or purchasers ·were ·to pay whatever portion of the price exceeded the amount of mortgages. In other words, that the purchaser or purchasers were buying the property cum onere. Some time after this sale, the present plaintiff instituted this suit by executory process to satisfy its claim, and Eloi Melancon, by intervention and third opposition, claimed the property free from all mortgages.

The third opponent. bases his claim to the property by virtue of the said adjudication previously referred to, and further avers that he is the bona fide purchaser at the sheriff's sale; that, the property having been appraised in globo and having been sold en masse, even if the plaintiff herein had a vendor's lien and privilege or a chattel mortgage, the vendor's lien and all its mortgage rights were lost by the said sale in bulk. In answer to the demand of the third opponent, plaintiff sets up the defense that the third opponent was not a bona fide purchaser; that he had acted as appraiser of the said property; that the property was not definitely described so as to put plaintiff on guard that the property subject to its mortgage was to be sold; that it was contrary to the agreement had with the lessor, the seizing creditor, at which sale third opponent purchased said property; and that the third opponent purchased the property subject to the mortgage rights granted under the mortgage act.

There was judgment for the third opponent, and plaintiff has appealed.

The chattel mortgage on the soda fountain on which plaintiff seeks to foreclose was duly executed and recorded in

the parish where the property is located. Under section 4 of Act No. 198 of 1918, the Chattel Mortgage Law, the recordation of this act of chattel mortgage on the property involved created a lien thereon in favor of the mortgagee from the time of filing the act for record, and this filing for record and its recordation served as notice to all persons of such mortgage, and created a lien on the property in favor of the mortgagee superior in rank to any privilege or lien arising subsequently thereto. The effect of the recordation of this chattel mortgage against this property had the same effect with regard to the debtor as the mortgage of any other property has under articles 3397 and 3399 of the Civil Code, viz., the debtor could not sell, engage, or mortgage the same property to the prejudice of the mortgage; if the mortgaged property goes out of the debtor's hands, the creditor can pursue it into whomsoever's hands he may find it, and the creditor has the right of being preferred in the payment of his claim out of the proceeds of the sale of the property in accordance with the rank of his mortgage.

The third opponent, Melancon, relies on a purchase by him at sheriff sale of the mortgaged property under a fieri facias issued against the mortgage debtor and under which the mortgaged property was seized and sold in globo with other movable property without any separate appraisement and sale of the mortgaged property. It is claimed by the third opponent that whatever lien and privilege the plaintiff had on the soda fountain by reason of its recorded chattel mortgage was lost by reason of this sale of the mortgaged property confusedly with other movable property under the fieri facias without a separate appraisement and sale. In support of his claim he relies largely on the case of Baton Rouge Rice Mill, Inc., v. Fairbanks, Morse & Co., Inc., 164 La. 729, 114 So. 633, to the effect that the holder of a chattel mortgage against a movable which becomes immovable by destination loses his lien and privilege where the movable on which his chattel mortgage operates is sold with the immovable of which it becomes a part under a sheriff's sale of the immovable without a separate appraisement. This case was followed and applied in the case of Bank of Winnfield v. Olla State Bank, 11 La.App. 640, 124 So. 621.

■ It was no doubt because of the holding in the above two cases cutting off the holder of a chattel mortgage where the movable on which he had a mortgage was made an immovable by destination and sold confusedly with the immovable without a separate appraisement that prompted the Legislature to pass Act No. 166 of 1932, which reads as follows: "Section 1. Be it enacted by the Legislature of Louisiana, That when any machinery, appurtenances or any other movable property whatsoever which is subject to and encumbered by a mortgage granted under the provisions of Act 198 of 1918, shall be moved to and located in or upon any immovable property, or installed therein or thereon in such a manner as to make same an immovable by nature or by destination, said machinery, appurtenances or other manufactured articles shall be and remain movable in so far as said mortgage is concerned, and shall not pass by the sale of the immovable property in or upon which same may be located, whether such sale be conventional or judicial; and no sale or mortgage of said immovable property shall in any manner affect or impair the lien of such chattel mortgage, or the remedies of the holder thereof for its enforcement."

There can be no doubt but that the Legislature has completely destroyed the effect of the cases above cited, and it is obvious that movable property covered by a duly recorded chattel mortgage cannot be affected in the least by a sale of such property along with an immovable of which it becomes a part by nature or by destination, whether that sale be conventional or judicial. Manifestly, if the above-quoted act had been in effect when the Baton Rouge Rice Mill v. Fairbanks, Morse Co. Case was decided, and any other cases for which that case might have served as a precedent, we would not now have these rulings on this point. Therefore, whatever authority that case might have had as a precedent for the present case was completely wiped out by the above act.

■ Moreover, it was clearly the intention of the Legislature in passing the above act to protect the holder of a duly recorded chattel mortgage against the loss of the lien by sales of the mortgaged property along with other property. It is true that this act does not specifically protect the chattel mortgage against the sale of the property in globo with other movables without a separate appraisement and sale; however, as the courts had not decided that the lien was lost by reason of

such sale, it is reasonable to assume that the Legislature construed the Chattel Mortgage Law as full protection to the chattel mortgage holder against judicial sales of the mortgaged property, except ·in those cases in which the movable had become immovable by destination, and had thereby come in conflict with a mortgage on an immovable.

■ Eliminating, therefore, the Baton Rouge Rice Mill Case as authority in this case, we have left only the one proposition: did the sale of the soda fountain in globo with other movables without a separate appraisement have the effect of destroying the lien thereon in favor of the plaintiff arising from its duly recorded chattel mortgage? If such a result would occur, it would create a rather anomalous situation, in view of the above act of the Legislature and the manifest intention of the act. In other words, in such a case, we would have a situation presented where the plaintiff loses his lien on the soda fountain because the property was not in this particular case sold with the building in which it was located as an immovable by destination, but was sold as a movable along with other movables. There could be no doubt, in view of the above act, that, if the soda fountain had been sold as an immovable by destination along with the building in which it was situated, the lien of plaintiff would not have been affected in the least. Therefore the evident reason that the Legislature did not specifically provide that the chattel mortgage lien would not be affected by a judicial sale of the property along with other property, irrespective of the status of the property as immovable by destination, was because the Legislature regarded such legislation unnecessary to protect the chattel mortgage holder against such judicial sales. See Bank of White Castle v. Clark, 181 La. 303, 159 So. 409.

A chattel mortgage, when recorded, is full and complete notice to the world of the existence of the lien against the property described in the mortgage. The debtor cannot sell or alienate the property to the prejudice of the chattel mortgage holder. The property passes to third persons cum onere. In the present case the record not only shows that third opponent had constructive notice of the existence of plaintiff's chattel mortgage on the soda fountain by reason of the public record thereof, but, in addition thereto, he had actual notice thereof from the fact that the sheriff read at the sale the certificate showing the mortgage, and announced that the purchaser bought the property subject to the mortgage. Under no theory can third opponent be classed as a purchaser in good faith and without notice. He took title to the property cum onere.

■ In making a sale of property under execution, the sheriff is required to procure and read at the sale a certificate showing the privileges and mortgages on the property offered for sale. Article 678 of the Code of Practice requires the sheriff to procure and read this certificate when he sells lands, "or other objects susceptible of being mortgaged." This means that he must procure and read this certificate on all property subject to a chattel mortgage. Under article 679 of the Code of Practice, if there exists any mortgage or privilege on the property put up for sale, it is made the duty of the sheriff to give notice that the property is sold subject to all privileges and mortgages thereon. This was done in the present case, and third opponent purchased the soda fountain subject to the lien and privilege thereon of plaintiff.

■ Furthermore, the courts of this state should note a difference between a privilege which confers a right of preference and one which also gives the additional right to follow the property on which·it rests into the hands of a third person or persons. The articles of .the Civil Code which give the right of preference are found in Book 3, title 21, beginning at article 3182 and ending with article 3277, and in which is to be found article 3228 relative to the sale en masse with other goods and the loss of privilege; while the right to follow the property on which the mortgage rests in the·hands of a third person or persons is to be found in Book 3, title 22, beginning at article 3278 and ending with article 3411.

■ This distinction is marked by the French commentators in apt phrases. Under their nomenclature, privileges of the first class, which are by far the most numerous, confer a "droit de preference" only, while those of the second class confer in addition a "droit de suite." It is the holder of a privileged debt of the first class who is obliged to intervene by way of third opposition and to ask for a separate appraisement and sale of ·the property on which he has·a privilege in order

to preserve his rights when said property is seized in globo with other property of the debtor by a third person. The reason is obvious. In such case, the property passes to the purchaser free of encumbrances. The contest for preference is then fought out over the proceeds. But, if a creditor with a privilege on only a part of the property seized permits the sale of such property to be made in globo with other property of the debtor without having asked for the separate appraisement and sale of that part of the property on which his privilege bears, it becomes impossible to determine what proportion of the purchase price is to be allocated to the property on which he had a privilege with the consequence that his rights are lost. Mortgages, whether movables under the Chattel Mortgage Law, or immovables, under the Code, are a species of privilege and fall under the second classification. The mortgagee, under the Chattel Mortgage Law, or the holder of a special mortgage on immovables, is never required to intervene by way of third opposition in order to maintain his rights. That is so because his rights are not lost by the alienation, be it by public or private sale. The fact that his rights are not lost by private sale is so elementary that we need pay no further attention to the point. It is equally clear that his rights are not lost when the property on which his mortgage bears is sold under a fieri facias, for the reason that article 709 of the Code of Practice provides: "The hypothecary action lies against the purchaser of a property seized, which is subject to privileges or mortgages, in favor of such creditors as have said privileges and mortgages, in the same manner and under the same rules and restrictions as are applicable to a third possessor of a mortgaged property."

The law relative to the hypothecary action is found in Code of Practice, art. 61 et seq., and in the Civil Code, art. 3399 et seq. The existence of mortgage rights presupposes registry, of course; in our case the mortgage act was duly registered in accordance with law. The holder of a special mortgage need lose no sleep over the actions of other creditors with reference to the mortgaged property. The law protects him. See Code of Practice, arts. 684, 706, and 709. Moreover, if he has retained the pact de non alienando, as in this case at bar, he may disregard any aliena-tion of the mortgaged premises whether by public or private sale and proceed directly against his mortgagor. See Citizens' Bank v. Miller, 44 La.Ann. 199, 10 So. 779. Thus we see that the Legislature acted wisely in not going any further with Act No. 166 of 1932.

For the reasons herein set forth, it is ordered that the judgment of the court be annulled, reversed, and set aside; and that there be judgment herein in favor of plaintiff and against intervener and third opponent dismissing the intervention and third opposition, all at the costs of the said intervener and third opponent.

LE BLANC, J., dissenting.