197 So.2d 345 (1967)
Alvin G. BAHAM et al.
v.
Leonard F. SUTHERLAND, Individually and as Owner and/or Operator of Sutherland Roofing Company.
No. 2550.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1967.
*346 Alvin G. Baham, Gretna, for plaintiffs-appellees.
Ronald A. Fonseca, New Orleans, for defendant-appellant.
Before McBRIDE, CHASEZ, and JANVIER, JJ.
McBRIDE, Judge.
This appeal was taken by defendant from a judgment of $600 in favor of plaintiffs for unpaid rent; the judgment also maintained plaintiffs' lien and privilege on a 1966 Ford truck resulting from the seizure thereof by the sheriff under a nonresident writ of attachment issued at plaintiffs' behest.
The facts as found by the trial judge, which are fully supported by evidence adduced by plaintiffs, are:
Defendant, who was a resident of Knoxville, Tennessee, engaged in the occupation of roofer, came to New Orleans shortly after Hurricane Betsy struck on September 9, 1965, seeking employment as roofer to repair buildings damaged by the storm. Defendant at first worked as a subcontractor for a contractor named Morris Bart. Bart at the time had an agreement with plaintiffs, the co-owners of a dwelling located at 1224 Amelia Street, Gretna, La., whereunder plaintiffs would permit Bart's employees to reside in the house without the payment of rent. The plaintiffs had contemplated moving the building and their friendship with Bart, who in the past had done "favors" for them, prompted the agreement for the gratuitous use of the building by Bart's employees pending the building being moved. Under said agreement defendant, as Bart's subcontractor, had his employees move into the Amelia Street address and defendant also used the property as an office and as a place for storing his Ford truck and certain roofing equipment.
In December, 1965, Bart and defendant came to a parting of the ways which information Bart imparted to plaintiffs, whereupon plaintiff Baham, as a co-owner *347 of the property, contacted defendant and verbally informed him that his employees would no longer be permitted to remain in the premises without the payment of rent, and that if defendant wished to continue the occupancy of the property for his employees he would be obliged to pay rent at the rate of $200 per month. Baham testified that defendant agreed to pay such rent. Defendant disputes this, but the trial judge believed Baham and held there was an agreement to pay rent in the above mentioned amount and we perceive no error in this finding. Defendant did not pay and this suit ensued, plaintiffs claiming there was three months' rent, or $600, due. The judgment for $600 was proper.
Whether the nonresident writ of attachment should have been maintained with recognition of plaintiffs' claimed lien and privilege on the truck seized thereunder is another question. Before pleading to the merits, defendant moved for a dissolution of the writ on the ground the allegations contained in plaintiffs' petition were not true. The trial judge dismissed the rule to dissolve. Defendant then applied to this court for writs of certiorari, prohibition and mandamus. We refused writs for the reason defendant had made no showing of error in the ruling complained of. See our docket No. 2326.
Defendant in his answer to the suit denies he was a nonresident of Louisiana and set up that the attachment was improvidently issued and prayed for its dissolution; he also presented a reconventional demand and prayed for damages allegedly accruing to him from the allegedly illegal issuance of the writ. The judge below on the trial of the merits held defendant's domicile was in Tennessee and maintained the writ; the judgment is silent as to the fate of the reconventional demand and it must be considered that the demand was rejected. Succession of Foster, 240 La. 269, 122 So.2d 96. Moreover, this court is empowered to render any judgment which is just, legal, and proper upon the record on appeal.
Whereas, defendant claims he established a domicile in Louisiana the onus is upon him to prove it. The law is settled that the party who seeks to avail himself of a change of domicile bears the burden of proving it. So long as any reasonable doubt remains, the presumption is that it has not been changed. The domicile of origin continues until another is acquired. Succession of Simmons, 109 La. 1095, 34 So. 101; Dealers Building Material Supply Co. v. Campbell, La.App., 89 So.2d 419, and the cases cited therein.
In Succession of Rhea 227 La. 214, 78 So.2d 838, the Supreme Court, respecting the essential elements of domicile, said:
"The acts and conduct of the parties speak louder than words when it comes to a determination of domicile. As stated in Stine v. Moore, 5 Cir., 213 F.2d 446, 448: `Residence in fact, and the intention of making the place of residence one's home, are essential elements of domicile. Words may be evidence of a man's intention to establish his domicile at a particular place of residence, but they cannot supply the fact of his domicile there. In such circumstances, the actual fact of residence and a real intention of remaining there, as disclosed by his entire course of conduct, are the controlling factors in ascertaining his domicile. As stated by Mr. Justice Stone: "When one intends the facts to which the law attaches consequences, he must abide the consequences whether intended or not.'" State of Texas v. [State of] Florida, 306 U.S. 398, 425, 59 S.Ct. 563, 576 [830], 83 L.Ed. 817."
The defendant came to Louisiana alone; the following month, October, 1965, his wife and four children joined him and the family is presently in Jefferson Parish living in a trailer at 2112 Belle Chasse Highway. Defendant and his wife emphatically testified that they came to Louisiana to establish a domicile. The wife pointed out that in Tennessee she had to work to augment *348 the family's finances but that as conditions in Louisiana were better she would not have to work but could stay home and devote more time to her children and they could get a proper education.
When defendant first arrived in Louisiana he resided at 1608 St. Charles Avenue, New Orleans, but when his wife and children came the family took up residence in the trailer in Jefferson Parish. From the inception of his arrival here plaintiff engaged himself in the roofing business which had been his occupation in Tennessee. At first he stored his equipment in a garage in New Orleans the rent for which he paid up to April 1966. He had several men working for him and became roofing subcontractor for Bart Construction Company which conducted business in Jefferson Parish. Plaintiff carried on his business under the name "Sutherland Roofing Company" and the occupational license was issued in that name. He obtained a Louisiana automobile driver's license in October, 1965. When his relationship with Bart Construction Company terminated he continued to conduct his roofing business on his own. He has a phone in his business name, had stationery printed and as late as March 3, 1966, ordered business cards and letterheads; he has a checking account in a bank in Jefferson Parish.
Defendant's wife testified that when she first came to New Orleans she enrolled her children in a public school, later transferring them to a religious parochial school which they were attending at the time of the issuance of the writ (March 18, 1966). The wife testified that in February, 1966, she pre-registered her children in the parochial school for the next year and paid their tuition in advance.
Plaintiff owned a residence in Knoxville, Tennessee, which was furnished; in December, 1965, before the writ of attachment was issued, plaintiff placed his Tennessee house together with the furniture therein on the market for sale. A sale was not consummated until after the issuance of the writ, but the record makes it clear that long before the debt sued for accrued and the writ of attachment was issued plaintiff was endeavoring to dispose of his Tennessee property. He states that at present he has no assets whatsoever in that state and whatever property he owns is in Louisiana.
We think the statements of plaintiff, corroborated by those of his wife, and the above mentioned actions and activities of the couple have established the animus manendi. The fact that plaintiff disposed of all the property he had in Tennessee, and also the fact that the children's school tuition has been paid for the next coming year clearly manifests defendant's intention and determination to establish a domicile and remain in Louisiana.
The evidence relied on by plaintiffs to countervail the above consists of some statements the deputy sheriffs say defendant's wife made to them at the time the attachment was levied. We accord little importance to these statements which need not be set out here. Plaintiffs also point out that the license plates on defendant's truck, issued in Tennessee, expired April 1, 1965, and that defendant did not obtain a local automobile license. Defendant gives his reason for not securing Louisiana license plates. He states he had difficulty in securing the "proper papers" for the truck. The truck was mortgaged in Tennessee and when the defendant referred to "papers" he undoubtedly meant the certificate of ownership. Plaintiffs also argue that because defendant and his wife did not register as voters in Jefferson Parish their intention must have been to remain citizens of Tennessee. These parties could not have registered to vote in Jefferson Parish for the simple reason the tenure of their residence in Louisiana was insufficient to qualify them as voters here. (See R.S. 18:31, as amended). There is no evidence tending to show that after coming to Louisiana they voted in Tennessee.
The facts in the instant case are very similar to those to be found in Dealers *349 Building Supply Co. v. Campbell, supra, wherein the court held that defendant, who moved from Texas to Louisiana, was a resident of this state. The evidence held sufficient to establish the Louisiana domicile, as set forth in the opinion of the court, is that defendant moved his family to Louisiana, entered his child in a Louisiana school, brought stock in and was working for a Louisiana corporation and had no business connections in Texas. He explained his seeming laxity in such matters as automobile license, registering to vote, and opening a Louisiana bank account.
The writ of attachment should not have been maintained by the court but contrariwise should have been dissolved.
The reconventional demand is composed of four items of damages allegedly caused by the issuance and execution of the writ. No malice on the part of plaintiffs having been shown, the defendant is entitled only to actual damages resulting from the wrongful attachment. Defendant claims that by reason of the seizure of his truck he was obliged to purchase another in order to carry on his business. This item must fall of its own weight. The purchase price of another truck would not be the proper measure of whatever damages may have accrued from the seizure of the other truck.
Defendant also claims $600 for deprivation of the use of a tar kettle seized by the sheriff but which was released from seizure about two weeks later. In regard to this item there is no proof of any pecuniary loss that defendant may have sustained. Nor is there any proof that defendant suffered "mental embarrassment, anxiety and duress" as a result of the seizure, and his claim therefor likewise is disallowed. Harrison v. Atlas Signcrafts Co., La.App., 200 So. 173.
Defendant also claims $175 in reimbursement of attorney's fees for the dissolution of the writ of attachment. Under C.C.P. art. 3506 attorney's fees for services rendered in connection with the dissolution of the writ may now be claimed in reconvention whether the writ be dissolved on motion or after trial on the merits. The evidence shows that defendant paid his attorney $250, of which $100 was understood to be for the attempt to dissolve the writ on motion and $150 was for the defense of the suit. Therefore, defendant should be allowed to recover $100 for that portion of the attorney's fee charged for obtaining a dissolution of the writ. The fee for the defense of the suit, of course, is not recoverable.
For the reasons assigned, the judgment insofar as it casts defendant for $600 is affirmed; that portion of the judgment which recognizes and maintains plaintiffs' lien and privilege on the seized truck is reversed and the judgment is amended so as to provide that the nonresident writ of attachment is dissolved, and the judgment is further amended so as to provide that defendant is entitled to recover from plaintiffs on the reconventional demand, the sum of $100 with legal interest thereon from the date of the demand and the judgment is also amended so as to provide that defendant shall not be liable for any court costs (including the sheriff's charges) in connection with the writ of attachment. As thus amended and in all other respects the judgment is affirmed. Plaintiffs are to pay the costs of this appeal.
Affirmed in part, reversed in part, amended and affirmed.