383 So.2d 1337 (1980)
John J. MATHIEU and Norma R. Mathieu, Plaintiffs-Appellees,
v.
Malcolm Lamar NETTLES and Betty Jean Nettles, Defendants-Appellants.
No. 7525.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1980.
Rehearing Denied May 29, 1980.
*1338 Davis & Simmons, Kenneth N. Simmons, Many, for defendants-appellants.
*1339 Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, for plaintiffs-appellees.
Before CULPEPPER, DOMENGEAUX and FORET, JJ.
FORET, Judge.
This matter arises out of two basic suits. One is a petition for executory process, # 31,131 on the docket of the Eleventh Judicial District Court, and the other is a petition for a writ of sequestration, # 31,130 on the docket of the same court.
On August 3, 1978, John J. Mathieu and his wife sold to Malcolm Lamar Nettles and his wife, a certain tract of land known as "Shady Lane Landing" in Sabine Parish, Louisiana, together with certain items of movable property. The sale was made on credit for the sum of $235,000.00, $33,000.00 of which was paid in cash and the balance on one promissory note of $202,000.00. The balance was to be in paid in ten annual installments of $20,200.00 each, together with 6 ½% interest thereon.
On August 2, 1979, the Mathieus filed a petition for executory process, alleging that the Nettles had defaulted on the first installment of the note, and praying that a writ of seizure and sale issue for the property described in the credit sale deed, together with three 12' × 40' Top Kat mobile homes.
On the same day, the Mathieus also filed a petition for writ of sequestration praying that the three 12' × 40' Top Kat mobile homes be sequestered, once again alleging that the three mobile homes were a part of the credit sale deed.
The Nettles filed an answer and reconventional demand to the petition for sequestration, a rule to dissolve the sequestration and for damages, and an answer and reconventional demand to the petition for executory process, seeking damages and dissolution of the writ of seizure and sale.
The suit relating to the executory process has been compromised. Therefore, the sole issue remaining is the rule to dissolve the writ of sequestration and for damages. This rule was heard on August 31, 1979. The court maintained the writ of sequestration and denied the Nettles' claim for damages. In his oral reasons for judgment, the trial judge stated that in reaching his decision, he considered several documents other than the credit sale deed and found the trailers to be immovable by destination and therefore a part of the credit sale deed itself. The trial court also admitted parol evidence in reaching its decision, all over the objection of counsel for defendants. Defendants have appealed.
The primary issue before us is whether or not the three mobile homes in question were a part of the credit sale between the Mathieus and the Nettles.
To further confuse the issue, a separate bill of cash sale and a separate affidavit pertaining to the three mobile homes were executed unilaterally by the Mathieus, allegedly on the same day as the credit sale. The act of cash sale was not signed by the Nettles, nor does the record reveal that this act of sale or the separate affidavit were ever filed of record in Sabine Parish. The act of cash sale simply purports to transfer title to the three mobile homes from the Mathieus to the Nettles for the sum of $100.00 "cash in hand paid, receipt of which is hereby acknowledged and other valuable considerations". No chattel mortgage appears of record to have been executed on the trailers.
A pertinent part of the affidavit executed by the Mathieus stated:
"that Appearers deposed that they purchased the aforesaid house trailers from Jerry Smith's Mobile Homes in Mansfield, Louisiana, in the year 197; that the trailers were manufactured for the express purpose of being made immovable by destination, that there have never been any automobile vehicle titles or other evidence of ownership given to Appearers by the sellers; that Appearers do hereby, and by these presents, warrant *1340 title to the aforesaid house trailers to BETTY JEAN NETTLES and MALCOLM LAMAR NETTLES, purchasers herein, and that they will hereby hold harmless the aforesaid BETTY JEAN NETTLES and MALCOLM LAMAR NETTLES for any loss or damage which may be occasioned to them for any deficiency in title of the aforesaid trailers at a later date."
This affidavit is not recorded in the records of Sabine Parish, and there is no evidence in the record to show that the Nettles knew of its execution or existence prior to this litigation.
Careful examination of the credit sale deed shows that the three mobile homes were not described or listed therein. Nor does the deed contain any omnibus language such as "all buildings and improvements" that may be construed as encompassing the mobile homes. The trial court, in reaching its decision, considered the affidavit, the bill of sale, the contract to bind sale, the promissory note, an insurance binder on the three trailers, among other documents, and some parol evidence. Counsel for the Nettles argues that in so doing, the trial court erred, such evidence being in violation of the parol evidence rule. We agree.
Parol evidence cannot be admitted against or beyond what is contained in a written contract, and is inadmissible to vary, alter or add to the contract terms. LSA-C.C. Article 2276; Snow-White Roofs, Inc. v. Boucher, 182 So.2d 846 (La.App. 4 Cir. 1966). We are aware that although parol evidence cannot be introduced to vary the terms of a written act of sale, when an ambiguity exists in the act, resort to extrinsic evidence is permissible to clarify the ambiguity by showing the intention of the parties. Bostick v. Foret, 351 So.2d 238 (La.App. 4 Cir. 1977), writ denied, 352 So.2d 1031 (La.1977). The credit sale deed is clear and unambiguous. Parol or extrinsic evidence should not, therefore, have been admitted.
Additionally, an authentic act is full proof of the agreement contained in it, against the contracting parties, their heirs or assigns, unless forgery is alleged and proved. LSA-C.C. Article 2236. Recorded deeds of conveyance speak for themselves, and subsequent parol evidence cannot be admitted to modify their terms unless fraud or error is alleged. Knight v. Bickham, 143 So.2d 262 (La.App. 1 Cir. 1962). The above quoted rule applies to all authentic acts. The bill of sale which transferred ownership of the three mobile homes to the Nettles is, like the credit sale deed, in authentic form. Parol evidence should not have been admitted to alter or explain its contents since it is clear and unambiguous. The act contains the vendor's acknowledgement that he received the stipulated sum plus other consideration for the mobile homes. It is of no moment that the sum mentioned is apparently low compared to what was received in return. A vendor's acknowledgement in an authentic act of sale that he has received the stipulated sum in cash as consideration of the transfer of property is conclusive as to him, unless he alleges and proves fraud, error or force. Chenevert v. Lemoine, 161 So.2d 85 (La.App. 3 Cir. 1964), writ denied, 245 La. 1076, 162 So.2d 572 (1964); McGee v. Finley, 65 So.2d 384 (La.App. 2 Cir. 1953). None of the pleadings contain any allegations of forgery, fraud, or error, and none was proved. The credit sale deed did not mention the three mobile homes.
The Nettles next contend that the trial court committed manifest error in holding that the three mobile homes were immovable by destination. We think this contention is well founded.
LSA-C.C. Article 468[1], as it read at the time of the sale in question, stated in pertinent part:
"Things which the owner of a tract of land has placed upon it for its service and *1341 improvement are immovable by destination."
The Mathieus themselves placed the mobile homes on their property for its "service and improvement". Thus, it would seem that the mobile homes were immovable by destination. This provision of Article 468, however, must be construed in pari materia with LSA-R.S. 32:710N(1) and (2), which provide as follows:
"N. (1) Except as provided by Paragraph (2) hereof, when any vehicle whatsoever shall be moved to and located in or upon any immovable property, or installed therein or thereon in a manner which, under any other law, might make the vehicle an immovable the vehicle shall be and will remain a vehicle subject to the provisions of this Chapter governing its mortgaging or sale. Title to the vehicle shall not pass by the sale of the immovable property to which it has been actually or fictitiously attached, whether such sale be conventional or judicial. No sale or mortgage of or lien upon the immovable property shall in any manner affect or impair the rank or privilege of a chattel mortgage on such vehicle, or the remedies of the holder thereof for its enforcement.
(2) A mobile home designed for use as a place of human habitation and placed upon a lot or tract of land shall be an immovable when there is recorded in the appropriate conveyance or mortgage records of the parish where the said lot or tract of land is situated an authentic act or sale or mortgage or sale with mortgage which: (a) contains a description of the mobile home as described in certificate of title and a description of the lot or tract of land upon which the mobile home is placed, (b) contains a declaration of intent by the owner of the mobile home that it shall remain permanently attached to the lot or tract of land, and (c) has attached to said act the certificate of title for the mobile home described therein.
Upon the recordation of the act together with the certificate of title described above, the mobile home shall cease to be subject to the application of this Chapter and the taxes applicable to movables and shall thereafter be subject to all laws concerning immovable property."
Added by Acts 1975, No. 747, § 1, Acts 1978, No. 728, § 2, eff. Jan. 1, 1979.
The record shows that the above quoted provisions of LSA-R.S. 32:710 were not complied with. No authentic act, sale, mortgage, or sale with mortgage, with attached certificate of title, containing a description of the mobile homes as described in the certificate of title, and a description of the lot or tract of land upon which the mobile homes were to be placed, along with a declaration[2] of the intention of the owner to the effect that the mobile home shall remain permanently attached to the lot or tract was recorded in the appropriate conveyance or mortgage records of Sabine Parish.
Defendants cite City of Oakdale v. Benoit, 342 So.2d 691 (La.App. 3 Cir. 1977) as authority for the proposition that mobile homes are movable. In Benoit, we held that mobile homes were just that, "mobile homes or house trailers" within the contemplation of a city zoning ordinance, even though the wheels were removed and the trailer placed on blocks. Here, we are dealing not with the question of whether or not a mobile home is a mobile home or trailer within the contemplation of a zoning ordinance, *1342 but whether or not a mobile home is an immovable by destination. Our legislature in LSA-R.S. 32:710[3], has dictated what must be done for a mobile home to become an immovable. These requirements were not complied with; therefore, the mobile homes never became immovables in the eyes of the law. But even if we were to assume, arguendo, that the three mobile homes in question did, in fact, become immovable by destination, despite the provisions of LSA-R.S. 32:710, the plaintiffs still cannot prevail. The new Civil Code Article 468, and the redactors' comments thereunder state as follows:
Art. 468. Deimmobilization
Component parts of an immovable so damaged or deteriorated that they can no longer serve the use of lands or buildings are deimmobilized.
The owner may deimmobilize the component parts of an immovable by an act translative of ownership and delivery to acquirers in good faith.
In the absence of rights of third persons, the owner may deimmobilize things by detachment or removal.
(Acts 1978, No. 728, § 1, eff. Jan. 1, 1979. Amended by Acts 1979, No. 180, § 2, eff. Jan. 1, 1980.)
Comments
(a) This provision codifies rules developed by Louisiana courts.
(b) Component parts of an immovable so damaged or deteriorated that they can no longer serve the use of lands or buildings are de-immobilized. See Folse v. Triche, 133 La. 915, 37 So. 875 (1904): "[W]hen, from any cause, a movable ceases to be of service to a tract of land, or is detached from a building or tenement of which it formed a part as an accessory, there is no longer ground for the claim that such movable appertains to the realty." See also Wakefield State Bank v. T. Fitz-Williams & Co., 158 La. 838, 104 So. 734 (1925); Von Phul v. Caire & Graugnard, 12 Orl.App. 93 (La.App. Orl. Cir. 1914). Under the circumstances, prior mortgages or other interests of third persons do not preclude de-immobilization. Ibid.

(c) The owner may de-immobilize component parts of an immovable by an act translative to ownership and delivery to acquirers in good faith. See Weil v. Lapeyre, 38 La.Ann. 303 (1886); Mechanics and Traders Ins. Co. v. Gerson, 38 La. Ann. 310 (1886); Bludworth v. Hunter, 9 Rob. 256 (La.1844); Von Phul v. Caire & Graugnard, 12 Orl.App. 93 (La.App. Orl. Cir. 1914); cf. Bon Air Planting Co. v. Barringer, 142 La. 60, 76 So. 234 (1917); Chestnut v. Hammatt, 157 So.2d 915 (La. App. 1st Cir. 1963). In these circumstances, prior mortgages, or other interests of third persons do not preclude de-immobilization. See Weil v. Lapeyre, supra; Mechanics and Traders Ins. Co. v. Gerson, supra; but cf. Alliance Trust Co. v. Gueydan Bank, 162 La. 1062, 111 So. 421 (1927) (mortgage creditor entitled to the value of immovables by destination that were seized and sold by general creditors of the debtor). In any case, a creditor may enjoin the sale of things forming part of the security of his mortgage. Citizens Bank v. Knapp, 22 La.Ann. 117 (1870). By way of exceptional legislation, the de-immobilization of certain home appliances covered by a real mortgage is excluded until payment of the indebtedness secured by the mortgage. R.S. 9:5121-5126. See Acts 1978, No. 728, § 3.
(d) In the absence of rights of third persons, the owner is free to de-immobilize anything. Cf. Chestnut v. Hammatt, 157 So.2d 915 (La.App. 1st Cir. 1963). De-immobilization may be effected by actual detachment or removal; a mere intention to remove or detach does not suffice. *1343 See Bon Air Planting Co. v. Barringer, 142 La. 60, 76 So. 234 (1917); Maginnis v. Union Oil Co., 47 La.Ann. 1489, 18 So. 459 (1895). The execution of a chattel mortgage on previously unencumbered things has the same effect as actual detachment. Bank of White Castle v. Clerk, 181 La. 303, 159 So. 409 (1935). Upon detachment, in the absence of contrary provision of law, the things re-acquire the status of movables. Cf. Wakefield State Bank v. Fitz-Williams & Co., 158 La. 838, 104 So. 734 (1925).
Obviously, therefore, when the Mathieus sold the three mobile homes to the Nettles by an act of cash sale, the Mathieus effectively deimmobilized them. As a matter of fact, when the writ of sequestration was issued, the mobile homes had in fact been moved off of the real estate by the Nettles and were in the process of being sold to yet another third party. So, whether or not the mobile homes were immovable by destination at one time is of no comfort to the plaintiffs, because of deimmobilization.

DAMAGES
LSA-C.C.P. Article 3506 states:
"The defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued. If the writ of attachment or of sequestration is dissolved, the action shall then proceed as if no writ had been issued.
The court may allow damages for the wrongful issuance of a writ of attachment or of sequestration on a motion to dissolve, or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of the writ may be included as an element of damages whether the writ is dissolved on motion or after trial on the merits."
The above quoted provision is statutory authority for the granting of damages, including attorney's fees, upon the dissolution of an improvidently issued writ of sequestration.
The Nettles allege that as a result of the sequestering of the mobile homes, they lost $6,600.00, that being the amount for which the homes would have been sold. This is corroborated by the testimony of Gerald B. Procell, who stated that he had agreed to buy the mobile homes for a price of $2,200.00 each, or a total of $6,600.00 (Tr., pg. 95). Malcolm Nettles' testimony is to the same effect. However, the record is devoid of any testimony or other evidence as to the value of the mobile homes at the time of trial, or exactly what loss the Nettles have sustained or will sustain in this connection. Inasmuch as we are ordering the return of the mobile homes to the Nettles, and there is no evidence in the record to indicate that the mobile homes, at time of trial, were worth less than $2,200.00 (i. e. that the Nettles can no longer receive $6,600.00 for the mobile homes), we must conclude that the Nettles have failed to carry their burden of proof of showing any loss or damage in this connection. Therefore, an award for same will be denied.
At the time of the sequestration, the mobile homes had been moved to a location approximately three miles from Shady Lane Landing. The Nettles alleged that this was done at a cost of $300.00. The record shows that the actual cost was $450.00 (Tr., pg. 78). However, we are disinclined to award an amount in excess of that prayed for. Accordingly, we will award the amount of $300.00 to the Nettles to compensate them for the cost of moving the mobile homes.
The Nettles seek $5,000.00 in general damages for wrongful sequestration. Damages of this nature are not restricted to pecuniary loss but may encompass injury to social standing or reputation as well as humiliation, inconvenience and mortification. Mitchell v. W. T. Grant Company, 94 S.Ct. 1895, 416 U.S. 600, 40 L.Ed.2d 406 (1974); McGee v. Missouri Valley *1344 Dredging Co., 182 So.2d 764 (La.App. 1 Cir. 1966), application denied, 249 La. 62, 184 So.2d 734 (1966). The fact that a party seeking to recover damages because of illegal issuance and execution of a writ of sequestration could not establish the amount of damages he is entitled to with certainty does not discharge the person at whose instance the sequestration is issued from liability, and a court should fix quantum of damages as best it can with the record before it. Ralph's Fleet, Incorporated v. American Marine Corp., 157 So.2d 317 (La.App. 4 Cir. 1963). After a review of the record and the circumstances of this case, we are of the opinion that an award of $1,000.00 for inconvenience, humiliation and embarrassment is justified.

ATTORNEY'S FEES
Attorney's fees are a proper item of damage in an action for wrongful sequestration and should be awarded. Bice v. Southside Motors, Inc., 344 So.2d 78 (La. App. 2 Cir. 1977); Oubre v. Hinchman, 365 So.2d 17 (La.App. 4 Cir. 1978), writ denied, 365 So.2d 1375 (La.1978); Article 3506, supra. The award, however, must be limited to that part of the fee dealing with the reconventional demand, and must exclude that part dealing with defense of the original suit. Baham v. Sutherland, 197 So.2d 345 (La.App. 4 Cir. 1967); Oubre, supra. Appellants pray for an award of $5,000.00. No evidence was offered regarding the value of services rendered by counsel in obtaining dissolution of this writ. A reviewing court has the authority to make an award of attorney's fees by applying its knowledge to the extent of services rendered and the value thereof to the record before it. Texhoma Contractors, Inc. v. Southern Shipbuilding Corp., 337 So.2d 584 (La.App. 4 Cir. 1976). In our judgment, an award of $1,000.00 would adequately compensate counsel for his services.
For the above and foregoing reasons, the judgment of the trial court is reversed.
Judgment is hereby rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs-in-rule, Malcolm Lamar Nettles and Betty Jean Nettles, and against John J. Mathieu and Norma R. Mathieu, defendants-in-rule, dissolving the writ of sequestration; and that the three mobile homes in question be returned to the Nettles.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Malcolm Lamar Nettles and Betty Jean Nettles and against John J. Mathieu and Norma R. Mathieu in the amount of $2,300.00, as damages for wrongful sequestration.
All costs, both at trial level and on appeal are assessed against John J. Mathieu and Norma R. Mathieu.
REVERSED AND RENDERED.
CULPEPPER, J., concurs on the basis that even if the mobile homes were immovable by destination, they were de-immobilized by the separate sale thereof.
NOTES
[1] This article has been amended by Acts 1978, No. 728, § 1. LSA-C.C. Article 467 which is based in part on former Article 468(1) of the La.Civil Code of 1870, now provides:

Article 467. Immovables by declaration
The owner of an immovable may declare that machinery, appliances, and equipment owned by him and placed on the immovable, other than his private residence, for its service and improvement are deemed to be its component parts. The declaration shall be filed for registry in the conveyance records of the parish in which the immovable is located.
[2] Although LSA-C.C. Article 467 provides that certain movables may become immovable by declaration, this article, like former LSA-C.C. Article 468, gives the general rule and must be read pari materia with LSA-R.S. 32:710, which specifically deals with mobile homes.
[3] See also LSA-R.S. 9:5357, and LSA-R.S. 6:836 for special statutes preserving the mobility of mobile homes where the mobile home is subject of a chattel mortgage, or where a banking or lending association has a vendor's privilege and mortgage on a mobile home.