451 So.2d 592 (1984)
Andrew T. HARRELSON et ux., Plaintiffs-Appellants,
v.
Dewitt O. HOGAN and Howell Heard, Defendants-Appellees.
No. 16204-CA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1984.
*593 Kidd & Kidd by Paul Henry Kidd, Monroe, for plaintiffs-appellants.
Michael S. Ingram, Monroe, for defendant-appellee, Administrator of Succession of Hogan.
Davenport, Files & Kelly by William G. Kelly, Jr., Monroe, for defendant-appellee Howell Heard.
Before PRICE, HALL and McCLENDON, JJ.
McCLENDON, Judge Pro Tempore.
Plaintiffs, holders of a chattel mortgage on movables in a supermarket, appealed a trial court judgment rejecting their claims for damages. For the following reasons we affirm.
In 1966 plaintiffs, Mildred and Andrew Harrelson, purchased the shelving, equipment and inventory in a supermarket known as Hogan's Discount Foods from Dewitt Hogan. The act of sale was executed before attorney Howell Heard. As additional protection for Mr. Hogan, who was granted a chattel mortgage on the movables in the store, Heard included a provision in the sale which required the inventory to be maintained by the mortgagor at a minimum of $20,000, wholesale price.
The seller, Dewitt Hogan, was also owner of the shopping center in which the *594 supermarket was located. He agreed to lease the building which housed the supermarket to plaintiffs for ten years, with an option to renew.
At the close of the ten year period, the parties agreed to a three year renewal of the lease. However, at the end of this three year lease the parties were unable to reach an agreement concerning a new lease, so plaintiffs decided to sell the business.
Norman Hogan, Dewitt Hogan's son and a longtime employee of plaintiffs, agreed to purchase the supermarket for the price of $151,950. Andrew Harrelson contacted attorney Heard and requested him to prepare the act of sale.
The sale was executed before Heard on July 2, 1979. In the sale the parties agreed that of the purchase price of $151,950, $81,950 represented the cost of inventory in the store and $70,000 represented the cost of shelving and equipment. The cost of merchandise had been determined by a store inventory conducted the weekend prior to the act of sale by Andrew Harrelson and Norman Hogan. Because the entire purchase price was owner-financed, Norman Hogan issued a promissory note to plaintiffs secured by a chattel mortgage on the movables in the grocery store. Therefore, in order to protect plaintiffs, Heard included a provision in the sale requiring the mortgagor to maintain a minimum inventory. This provision was similar to the one used in the 1966 agreement between Dewitt Hogan and plaintiffs. It stated in part:
"... in the event the mortgagors herein shall permit the stock of merchandise hereinabove described to be reduced (by sales not replaced) to a value of less than ____ ($____) dollars valued at wholesale prices, then the entire unpaid balance of said note shall ... become due."
The blank in the above provision was not filled in when the act of sale was executed.
As an additional inducement to plaintiffs, Dewitt Hogan executed an "act of subordination" in conjunction with the act of sale. He agreed, as lessor of the supermarket building, to subordinate his lessor's lien on the movables in the supermarket to the chattel mortgage held by plaintiffs. This document was also prepared by Heard.
The blank in the minimum inventory provision was not discovered until August 1981 when Andrew Harrelson, concerned over the apparent depletion of the inventory in the store, examined the act of sale and noticed the blank. At that time he contacted Heard and informed him of the blank. No action was taken to correct the omission. This appears to have been at least partly because of inability to agree on a proper figure.
On August 2, 1982, Norman Hogan sold to his father his undivided one-eighth interest in the real property occupied by the shopping center, inherited by him upon the death of his mother. In consideration for this undivided one-eighth interest, Dewitt Hogan agreed to discharge his son's $80,000 debt to him, including past due rent from the supermarket building. This transaction was executed before attorney Heard.
Norman Hogan failed to pay plaintiffs the monthly payment due on August 2, 1982, and on August 20, 1982, he filed a Chapter 11 Bankruptcy. This was later changed to a liquidating bankruptcy in January of 1983.
Plaintiffs then filed suit against Howell Heard and Dewitt Hogan, alleging they had suffered damages equal to the unpaid portion of the promissory note issued by Norman Hogan as a result of the omission of Heard and Dewitt Hogan's purchase of the undivided interest from his son.
The trial judge correctly found that the transfer of the undivided interest from Norman Hogan to Dewitt Hogan had nothing whatsoever to do with the act of subordination executed by Dewitt Hogan, nor did it have any bearing on plaintiffs' chattel mortgage. Therefore, plaintiffs were not damaged by the transfer.
The trial judge also correctly found that despite Heard's failure to insert the *595 minimum inventory figure in the July 2, 1979 act of sale, plaintiffs were not prevented from foreclosing, considering other language in the act of sale. Therefore, plaintiffs likewise failed to prove they were damaged by Heard's omission.
On appeal plaintiffs allege the trial court erred in finding they did not suffer damages either as a result of the negligence and/or breach of the fiduciary relationship by Heard, or the transfer of realty to Dewitt Hogan, which they claim breached the act of subordination.
We have carefully examined the trial court's finding regarding the alleged negligence on the part of defendant Heard in allowing the contract involved in this case to be executed with the blank for the minimum inventory figure not filled in, and we agree that plaintiffs have failed to establish that this defendant's negligence caused them to suffer damage or the amount of that damage.
No satisfactory explanation for the blank was given. Regardless of the reason, we find that the standard pact de non alienando in the act which read, "The mortgagors hereby agree in solido not to sell, alienate, deteriorate, or encumber said mortgaged property to the prejudice of this mortgage", provided plaintiffs protection from a serious depletion of the inventory.
In reaching that conclusion we found it necessary to do some research into the origin and nature of the pact de non alienando in our state (hereinafter sometimes referred to simply as the pact or pact de non).
As its name implies, the pact de non alienando was in its earliest form an agreement on the part of the mortgagor not to sell this mortgaged property to the prejudice of the creditor's mortgage. Its main function and greatest advantage were to permit the creditor in effect to disregard a violation of the agreement and proceed to execute upon the property as security for the debt owed him, even though it was then in the hands of a party other than the original mortgagor. He could just ignore the transfer in his foreclosure procedure.
The pact de non has been a provision in mortgage instruments since before the enactment of the 1808 Civil Code and certainly is considered a "standard" provision in such instruments today.
A most comprehensive comment on the subject is found in XXI Tulane Review at page 238"The Pact de non Alienando in Louisiana."
From this study we found that as early as 1823 the contention was made that as a procedural "tool" of the French or Spanish law, the pact had been abrogated by the enactment of the Civil Code of 1808.
This contention was soundly rejected by the Supreme Court in Nathan v. Lee, 2 Mart. (NS) 32 (La.1823), wherein the court found that rather than a procedural device of legislative creation the pact was contractual and judicial in its nature and origin and came from Spanish law still in effect. To the same effect see Donaldson v. Maurin, 1 La. 29 (1830) decided after enactment of the 1825 codes.
There seems to have been no serious deviation from that earliest pronouncement as to the contractual nature of the original pact.[1]
Just how far the courts have gone in upholding this contractual obligation on the part of the mortgagor not to sell the property upon which he is in that instrument granting a mortgage we think is illustrated by the case of Avegno v. Schmidt & Ziegler, 35 La.Ann. 585 (1883), in which it was held that a confiscation by the United States of a tract of land upon which there existed a mortgage containing the pact de non would yield to a foreclosing creditor.
Just when the word "deteriorate" first came to be used commonly or regularly as a part of the pact we were not able to determine. What it did obviously was to *596 enlarge the agreement. In addition to contracting not to sell the mortgaged property, the mortgagor agreed not to "deteriorate" it to the prejudice of the mortgage.
The best known interpretation and application by the Louisiana Supreme Court of the enlarged pact de non is found in Federal Land Bank of New Orleans v. Mulhern et al, 180 La. 627, 157 So. 370 (La.1934).
In the Mulhern case, in which three foreclosure suits were consolidated for trial, all mortgage payments were current but the bank was permitted to foreclose its mortgages because the mortgagors had granted oil and gas leases on the mortgaged property and production was had under those leases. The court held that this was a deterioration of the mortgaged property to the prejudice of the creditor.
Although the pact de non was earliest found used in connection with mortgages involving immovables, we find that the pact is recognized as a proper and valid provision in chattel mortgages. See Folse v. Dali, 197 La. 511, 2 So.2d 6 (La.1941); Liquid Carbonic Corp. v. Leger, 169 So. 170 (La.App. 1st Cir.1936).
We further note that R.S. 9:5363 gives creditors with chattel mortgages all the rights and remedies of creditors holding mortgages on immovable property.
We conclude from this that Norman Hogan, the mortgagor in our present case, agreed not to deteriorate the mortgaged property to the prejudice of that mortgage. Part of the mortgaged property was the inventory or the merchandise in the grocery store he had purchased from plaintiffs. The other part was the shelving and equipment in the store building, leased from the elder Hogan, a defendant herein.
The act of sale and chattel mortgage allocated $81,950 of the $151,950 purchase price to inventory and $70,000 to shelving and equipment.
Naturally, in the normal operation of the business the merchandise would be sold and replaced constantly. This practice is recognized and provided for in the chattel mortgage law of Louisiana. R.S. 9:5351. It was covered in the paragraph immediately preceding the pact de non clause in the contract here under consideration.
This normal sell and restock cycle is not what plaintiff Harrelson became concerned with in August of 1981. He observed what appeared to him to be an abnormal decline in the total inventory to the point that he felt young Hogan might be jeopardizing the security plaintiffs held in the form of the chattel mortgage.
This is when he re-examined the contract, discovered the blank space meant to cover just this contingency when properly filled, and confronted defendant Heard with his concern.
Mr. Heard informed plaintiffs at that time (August of 1981) that despite the blank they had the right to foreclose if the stock was diminished, even though the note was current.
We are not called upon here to decide if in fact the inventory had been depleted to a point at which such action amounted to a deterioration of the mortgaged property to the prejudice of this mortgage, but only to determine if such a fact were properly established would it give plaintiffs the right to foreclose under the pact de non contained in the mortgage.
We find that such right did exist and to exercise it successfully plaintiffs would need only to establish by competent evidence that whatever depletion of inventory they were concerned about had in fact occurred and did in fact prejudice the mortgage.
We do not feel that it would be an easy matter to establish the prejudice by the depletion, but the mere fact that proof may be difficult does not preclude a party from seeking to exercise a remedy available to him. It might be much easier, for instance, if plaintiffs (in August of 1981) had found young Hogan had allowed half of the cash registers at the check-out counters to become inoperable, some of the refrigeration equipment to break down for want of proper maintenance, and some of *597 the shelving to bend or fall from improper stocking or overloading. However, this was not plaintiffs' complaint.
Whether plaintiffs elected not to avail themselves of the remedy due to their mistaken belief that Dewitt Hogan would not allow his son's business to fail or their desire to continue to receive the monthly payment on the note, we are in no position to say. We do find that they have not established that the negligence of defendant Heard caused any damage that may have resulted from their taking no affirmative action for an entire year after learning of the omission.
The transfer of the undivided one-eighth interest in the shopping center from Norman to Dewitt Hogan was not a breach of the act of subordination executed by Dewitt Hogan. The sale of the undivided one-eighth interest was a sale of realty to Dewitt Hogan. In the act of subordination Dewitt Hogan agreed only to subordinate his lessor's lien on the shelving, equipment and inventory (movables) in the supermarket to the chattel mortgage held by plaintiffs. The subordination was never intended to affect the real property occupied by the shopping center. Since the transfer was of an interest in real estate, the only possible damage plaintiffs could have suffered as a result thereof would be an ultimate diminution of assets to which they might turn if the chattels securing their note proved to be inadequate.
Even this possible damage has been minimized, since in the Norman Hogan bankruptcy proceeding, according to the trustee, suit was filed to recover the one-eighth interest in the shopping center because it was sold during the preferential period prior to bankruptcy. Assuming the one-eighth interest is recovered, it would be available to satisfy all creditors' claims, including any plaintiffs might have.
We further hold that Heard did not breach his fiduciary obligation to plaintiffs by preparing the transfer of the one-eighth undivided interest from Norman to Dewitt Hogan. The matters involved were just not directly related.
For these reasons, the trial court judgment is affirmed at appellants' cost.
NOTES
[1] We find that Civil Code Articles 3397 and 3399 may duplicate the remedy afforded creditors by the pact de non as far as sales of mortgaged property are concerned, but not deterioration of same.