CUTRER, Judge.
James and Ann Bond filed a rule to evict George and Mildred Green and J. B. and Freddie Powell from the following described property:
“LOTS 13, 14, 15, and 16 of Hedges Landing Lake Lots in Section 5, T5NR7E, Concordia Parish, Louisiana, as per plat by James H. Tooke, Reg. Land Surveyor # 3735 recorded in Plat Cabinet L. Envelope 150 B, Document Number 142064, of the Records of Concordia Parish, Louisiana.”
The plaintiffs alleged that defendants were occupying the property without a lease and that the purpose of defendants’ occupancy had ceased. In the alternative, the plaintiffs pleaded that, in the event it was determined that the defendants had a right to occupy the premises, the court should define the boundary of such occupied land. The defendants filed no pleading.[1]
*641 The trial court rendered judgment in favor of defendants, George and Mildred Green, recognizing that they had a usufruct over the following described property:
“Lots 13,14,15 and 16 of Hedges Landing Lake Lots in Section 5, T5NR7E, Con-cordia Parish, Louisiana, as per plat by James H. Tooke, Reg. Land Surveyor # 3735 recorded in Plat Cabinet L, Envelope 150 B, Document Number 142064, of the Records of Concordia Parish, Louisiana and specifically as designated on plaintiff’s exhibit number 6.”
The court further ordered the Greens to reimburse the plaintiffs, James and Ann Bond, for taxes previously paid in the amount of $24.89. The court ordered the Greens to pay taxes for 1980 and future taxes.[2] Plaintiffs appealed. We affirm.
The issues presented on appeal are:
(1) Whether, under the facts, the Greens’ usufruct had terminated; and
(2) If such usufruct is still in effect, whether the trial court erred in its designation of the extent of property subject to the usufruct.
WHETHER THE USUFRUCT TERMINATED
The facts are generally undisputed. In 1966, George and Mildred Green sold to Lloyd Love a tract of land containing approximately 55 acres of land.[3] The instrument by which the property was sold contained the following reservations:
“Vendors reserve unto themselves the usufruct of the house in which they now reside, the small house situated immediately on the west side of their residence and the yards surrounding the said residence.”
Mrs. Green, 76 years of age, testified that following the sale to Lloyd Love in 1966, they continued to live in the larger of the two structures. She stated that at the time of the sale to Love, both structures were in bad shape or dilapidated. The Greens attempted to make repairs to the larger house where they resided. They changed the floor on the porch on two occasions. They installed bath fixtures and made other repairs, but the overall condition of the house could not be appreciably improved. The structural portions of the house had deteriorated to such an extent that the house could not be safely lived in.
The small house was not occupied and likewise was in a dilapidated condition when the sale was made to Love. The condition of this structure deteriorated to the point that it was falling down. Mrs. Green stated that in approximately 1976, she had her son-in-law remove the structures. This was done by pushing them down with a tractor. Mrs. Green explained the reason for removing the structures as follows:
“Q. What was the reason you tore the houses down?
“A. The reason? Well, the termites got in the seals [sic] and ate the seals [sic]. You know how termites will do. And the floors in the back of the house had fallen down about that far from the walls, and I didn’t want the house falling down and injuring one of my grandchildren.
“Q. The termites had done great structural damage to the house.
“A. Yes. Both of them, as far as that’s concerned.”
After the removal of the structures, two mobile homes were moved on to the proper *642 ty and placed approximately in the location where the houses had been situated. The Greens occupied one mobile home and defendants, J. B. and Freddie Powell, daughter and son-in-law of the Greens, occupied the other.
Mrs. Green’s daughter, Freddie Powell, testified that she and her husband moved a mobile home onto the property in order to assist her mother in earing for Mr. Green who was 76 years old. He had been sick for several years and was an invalid at the time of trial. The income of the Greens was limited to Social Security payments and food stamps ($439.00 per month). Mrs. Powell testified that the structures were old and literally had decayed and had become termite infested to the extent that they were falling down. She stated that at the time of the sale to Love, the structures were in very bad shape. She testified that her mother and father attempted to repair same but such repairs did not impede the continuing deterioration of the structures. She classified the larger house as not livable and a health hazard.
Lloyd Love testified that at the time he purchased the property both structures were in terrible shape. He stated that neither house was livable at that time. For this reason he attached no value to the structures when he purchased the property. Love stated that he wanted the Greens to have a place to live for the remainder of their lives, and had considered removing the structures and building a new house for the Greens to live in. Due to a financial problem, however, he could not carry out his intention. He stated that the Greens had his permission to remove the deteriorated structures.
Plaintiffs urge that, under the facts presented, the usufruct should be considered terminated on the ground that the property subject to the usufruct has been totally and permanently lost. Plaintiffs rely principally upon LSA-C.C. art. 613. This article reads as follows:
“The usufruct of nonconsumables terminates by the permanent and total loss, extinction, or destruction through accident or decay of the property subject to the usufruct.” (Emphasis ours.)
Plaintiff’s position is without merit.
Article 613 terminates the usufruct if the total usufruct is lost through decay. In the case at hand, the usufruct extended to not only the two houses but the yards surrounding same.
The facts are undisputed that the two houses were in unlivable, decayed condition with no value at the time the usufruct came into existence. The attempts of the Greens to repair the structures proved to be an exercise of futility. The removal of these structures did not effectuate a total loss of the usufruct. This was a partial loss of the usufruct. The usufruct remained on the land or yards surrounding the structures.
Paragraph (d) of the Comment to article 613 explains this position as follows:
“The usufruct terminates only if the loss is total. Thus, if the usufruct is established simply on a building, and this building is destroyed completely, the usu-fruct terminates .... If the loss is only partial, the usufruct continues and is exercised on whatever remains of the thing. C.C. art. 614 (1870). Thus, if the usufruct is established ‘upon an estate of which the building is a part, the usufructuary shall enjoy both the soil and the materials.’ . . . . ” (Emphasis ours.)
Since the loss of the structures was due to decay of only a part of the usufruct, and not a loss of the total usufruct, the trial court correctly held that the usufruct continued on the remaining land.
Plaintiffs further urge that the Greens committed waste or neglected to make ordinary repairs or abused their enjoyment of the usufruct, and under LSA-C.C. art. 623,[4] the usufruct terminates.
This position of the plaintiffs is likewise without merit. The facts clearly reflect that these structures were old and *643 decayed. A usufructuary is not bound to restore property that has been destroyed because of age. LSA-C.C. art. 583 provides, in part, as follows:
“Neither the usufructuary nor the naked owner is bound to restore property that has been totally destroyed through accident or because of age.”
Finally, the plaintiffs contend that the defendants’ failure to pay the property taxes on the land they occupied entitled the plaintiffs, as naked owners, to terminate the usufruct. LSA-C.C. art. 584 places the obligation to pay the property taxes on the usufructuary but does not provide for termination of the usufruct upon failure to meet this obligation. That article reads:
“The usufructuary is bound to pay the annual charges imposed during his enjoyment on the property subject to the usu-fruct, such as property taxes.”
This article clearly gives rise to an obligation on the part of the usufructuary to pay the taxes, but if the naked owner has paid the taxes he has only an action against the usufructuary for reimbursement, rather than a right to terminate the usufruct. We are buttressed in this opinion by the comments to that article. Comment (e) reads, in pertinent part, as follows:
“The naked owner, in order to avoid a tax sale of his property, may pay the taxes due by the usufructuary and bring against him an action for reimbursement.
Consequently, the trial judge was correct in ordering the Greens to reimburse the plaintiffs for back taxes. He also correctly concluded that the failure to pay the taxes was not a ground for termination of the usufruct.
Finally, we turn to the question regarding the extent of the property subject to the usufruct. Plaintiffs argue that the trial judge was erroneous in allowing the testimony of Lloyd Love as to the area covered by the Greens’ usufruct. Plaintiffs argue that this testimony is parol evidence used to alter an authentic act. Again we disagree.
The general rule of law under our Civil Code art. 2276 is that parol evidence cannot be admitted to contradict or extend what is contained in a written instrument. However, where the instrument contains ambiguity, the court may resort to extrinsic evidence to clarify the ambiguity by showing the intention of the parties. Mathieu v. Nettles, 383 So.2d 1337 (La.App. 3rd Cir. 1980), writ den., 390 So.2d 202 (La.1980); Bostick v. Foret, 351 So.2d 238 (La.App. 4th Cir. 1977), writ den., 352 So.2d 1031 (La.1977).
In the instant case the reservation of the usufruct over the “yards surrounding the residence,” which is contained in the instrument conveying the property to Mr. Love, is ambiguous. The exact extent of the property included in the reservation of the usufruct is unclear. Mr. Love’s testimony, however, revealed that at the time of the sale the parties to the agreement contemplated that the usufruct would cover the four lots in question. He delineated this area on the plat which has been introduced into evidence. The trial judge correctly considered this evidence and set forth the description of the area covered by the usufruct in his judgment as previously set forth herein.
For the reasons assigned, the judgment of the trial court is affirmed. Plaintiffs are to pay all costs of this appeal.
AFFIRMED.

. Upon trial of the rule, counsel for plaintiffs, in his opening statement, explained to the court that the issue was whether a usufruct of the property in favor of the Greens had terminated.
The counsel for defendants contended that the usufruct held by the Greens had not terminated and that they had a right to occupy the property described in the rule to evict. The hearing proceeded and evidence introduced to determine the existence of the usufruct and, if so, theboundary lines of the area that was subject to such usufruct. We note this procedure because it may be said that such procedure contains aspects of both summary and ordinary proceedings. Any objections to such procedure, however, were waived by all parties as no *641 objections were raised. LSA-C.C.P. art. 1154 provides, in part, as follows:
“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading.”

. The record reflects no disposition of the case as to the remaining defendants, J. B. and Freddie Jo Powell.

. The plaintiffs, James and Ann Bond, purchased the property from Louisiana Savings Association without warranty of title in January 1980. That sale reflects that Louisiana Savings acquired title through merger with Rapides Bank & Trust Association. The record is devoid of any indication of when that merger took place or when or to whom Lloyd Love transferred title.

. LSA-C.C. art. 623 states:
“A usufruct may be terminated by the naked owner if the usufructuary commits waste, alienates things without authority, neglects to make ordinary repairs, or abuses his enjoyment in any other manner.”