1 .KLINE, J.
In this appeal, a corporate officer contests the imposition of corporate sales tax liability against him personally under La. R.S. 33:2845.1. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Preston W. Albert, Jr. was, at all pertinent times, president and chief executive officer, and a part owner of S & W Services, Inc. (S & W), an eighteen-wheeler repair service located in West Baton Rouge Parish (WBRP). Mr. Albert also had ownership interests in two interstate trucking companies, Tigator, Inc. (Tigator) and Bayou Kritter, Inc. (Bayou Kritter). S & W provided preventative maintenance and repair services to Tigator and Bayou Kritter, including the sale of all necessary parts.
Effective in July of 1996, the Louisiana Department of Revenue (Department) authorized and provided necessary documentation to Tigator and Bayou Kritter to allow these corporations to avoid paying sales tax to vendors on purchases of “tangible personal property that is to be used in the furtherance of ... interstate transportation business” in accordance with La R.S. 47:306.1.[2] Under La. R.S. 47:306.1, persons operating in ^interstate or foreign commerce are allowed to obtain such an “exemption” from payment of sales tax.[3] It is not a total exemption, because the taxpayer has to remit sales tax to the Department in accordance with the formula set forth in the statute.
All three of Mr. Albert’s corporations took the position that parts sold by S & *272 W that were installed by S & W on Tigator’s and Bayou Kritter’s eighteen-wheelers were “tangible personal property,” for use in interstate commerce, on which no sales tax was owed to the vendor, S & W. Beginning in September of 1996,[4] S & W stopped collecting and remitting sales tax on parts sold to Tigator and Bayou Kritter. Because of a limitation with their invoicing software,[5] S & W’s tax/business consultant, Mr. Ordrie Orte-go, testified that for invoicing purposes, S & W fictitiously assumed that all sales were comprised of fifty percent parts and fifty percent labor.[6] Since S & W could only collect sales tax on labor, due to their understanding with Tigator and Bayou Kritter, S & W collected sales tax that amounted to 4% of each invoice total. S & W maintained that one-half of the amount of sales tax collected was for the State of Louisiana and |4one-half was for West Baton Rouge Parish. S & W contends its intent was not to collect sales tax on the sale to Tigator and Bayou Kritter of tangible items (i.e., parts for their eighteen-wheelers).[7]
In November and December of 1998, West Baton Rouge Parish Council Revenue Agent, Kimberly A. Deaton, conducted a sales and use tax audit of S & W’s records. West Baton Rouge Parish took the position that Tigator and Bayou Krit-ter were not entitled to the La. R.S. 47:306.1 “exemption” on parts used in repairs made by S & W.[8] Consequently, the audit by Ms. Deaton resulted in a finding that S & W had remitted insufficient sales tax on sales made to Tigator and Bayou Kritter. WBRP further concluded that since a total of 4% sales tax had been collected on invoices from S & W to Tigator and Bayou Kritter, all of these tax funds should have been remitted to the parish, as the parish maintained that 4% sales tax was due on the entirety of every S & W invoice. S & W contends one-half of all sales tax collected was collected to pay state sales tax.
*273 A judgment was obtained against S & W for the fall amount of the sales tax deficiency claimed by WBRP; that judgment was not appealed and has become final. Thereafter, the tax collector of WBRP filed suit against Mr. Albert, under La. R.S. 33:2845.1, seeking to have him found personally liable for failure to remit all sales tax owed by S & W to WBRP. The trial court rendered judgment in favor of the parish, and Mr. Albert has appealed. Mr. Albert makes the following assignments of error:
|51. The Trial Judge erred in allowing evidence of prior assessments and a prior judgment against S & W Services, Inc.
2. The Trial Judge erred in denying the motion for directed verdict at the termination of Plaintiffs case.
3. The Trial Judge erred in not requiring a determination of the amount of taxes collected.
4. The Trial Judge erred in determining that the Defendant “willfully” failed to remit taxes.
5. The Trial Judge erred in assessing the liability for the subject sales taxes, etc. against the Defendant.
LAW AND ANALYSIS
Whether La. R.S. 47:306.1 actually provided an exemption to Tigator or Bayou Kritter is not directly pertinent to whether Mr. Albert, as a corporate officer, became liable for the payment of S & W’s tax debt. The extent of S & W’s tax debt was litigated in a prior suit, resulting in a judgment in favor of the parish. The judgment against S & W has become res judicata and establishes that a certain and specified amount of sales tax was due WBRP by S & W for the pertinent time period. Therefore, the only consideration in this appeal is whether the trial court properly applied La. R.S. 33:2845.1, which provided as follows: [9]
A. Notwithstanding any other provision of law to the contrary, if any corporation fails to file returns or to remit sales and use taxes required to be filed and remitted under any law or under any ordinance of a political subdivision in a parish which has a single sales and use tax collector for all political subdivisions in the parish, the single tax collector of such political subdivision is authorized, as an alternative means of enforcing collection, to hold those officers or directors who have direct control or supervision of such taxes or who are charged with the responsibility of filing such returns and remitting such taxes and who willfully fail to remit or account for such taxes collected, personally liable for the total amount of such taxes collected, and not accounted for or not remitted, together with any interest, penalties, and fees accruing thereon. Collection of the total amount due may be made from any one or any combination of such officers or directors who willfully fail to remit or account for such taxes withheld or collected.
|,;B. A corporation by resolution of the board of directors may designate an officer or director having direct control or supervision of such taxes or charged with the responsibility of filing such returns and remitting such taxes, and such resolution shall be filed with the secretary of state. [Emphasis supplied.]
Since the liability of the corporate officer depends on the liability of the corpora *274 tion, among other factors, the tax liability of the corporation must first be established, in a suit based on La. R.S. 33:2845.1. The plaintiff/tax collector, in the instant case, did in fact establish the tax liability of S & W by introducing the WBRP sales tax assessments and the judgment rendered thereon. These documents were relevant and properly admitted.[10]
All parties agree that in order to satisfy La. R.S. 33:2845.1, it must also be established that the corporation actually collected the taxes at issue, and that there was a “willful” failure to remit same.[11] The trial court found sufficient evidence presented through the testimony of Mr. Bergeron, the WBRP tax collector, Ms. Deaton, the WBRP revenue agent who audited S & W’s records, and Ordrie Ortego, the S & W business advisor, that the taxes in question had been collected by S & W and were willfully diverted from payment of the WBRP sales tax assessment by the issuance of a refund by S & W to Tigator.
|7In reviewing a trial court judgment, the appellate courts of the State of Louisiana are authorized by the constitution to review both law and facts. La. Const, art. V. § 10(B). Am appellate court may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In applying this test, a reviewing court must do more that simply review the record for some evidence that supports or controverts the trial court’s finding. Mari v. Hill, 505 So.2d 1120, 1127 (La.1987). Furthermore, to reverse a factual determination, the appellate court must find that a reasonable factual basis for the finding of the trial court does not exist in the record and that the record establishes that the finding is clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
Reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
The trial court specifically stated in reasons for judgment:
I do believe as a matter of fact that there was tax that was collected by S & W and was failed to be remitted willfully by Mr. Albert.
[[Image here]]
... Obviously there was an amount that was collected or there would not have been a remittance back to Tigator’s, if it hadn’t been collected.
*275 The record reflects that on July 15, 1999, after completing the audit of S & W’s records, WBRP Revenue Agent, Kimberly Deaton, and WBRP Revenue Director, J. Roger Bergeron, met with Mr. Albert, along with their respective attorneys. At that time, the audit results were disclosed to Mr. Albert. He was informed by the WBRP officials that it was their conclusion that $67,369.09 in sales tax had been collected by S & W, which had not been remitted to the parish. On that same day, S & W issued a check in the |samount of $67,369.09 to Tigator, signed by Mr. Albert, with the notation, “For Refund Sales Tax.”
The defendant corporate officer did not favor the trial court with his testimony or other evidence of his state of mind. Kimberly Deaton’s testimony, relative to the exit conference conducted with Mr. Albert, and her denial of having informed Mr. Albert he could refund the taxes to Tigator, was available to the court. Based on the ruling of the trial court in favor of the parish, it can be concluded that he evaluated the credibility and accepted the testimony of Ms. Deaton on these points. See Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993); Tauzin v. Claitor, 417 So.2d 1304, 1309 (La.App. 1 Cir.), writ denied, 422 So.2d 423 (La.1982).
Moreover, the trial court could have adjudged “willfulness.” Willfulness is a state of mind that a trial court must discern and determine from the documents and testimony, including the credibility of the witnesses. Willfulness is, of course, on the opposite end of the spectrum from accidental or negligent action. It may be said to be beyond intentional action in that the willful actor desires the consequences. “Willfulness” in this case is an intentional act with the desired consequence of avoiding remittance to the taxing authority. It is reasonable to so find by virtue of the issuance of the check to Tigator designated as a “refund” of “sales tax,” signed by Mr. Albert, in the amount of the outstanding tax due WBRP, as determined by the audit.
Thus, we can conclude there is supporting evidence for the trial court’s finding of fact and application of the law.
The trial court was certainly mindful of the defendant’s argument that some of these issues arose because of the inability of S & W to program its computer to invoice different rates on different items. The response of S & W’s management to that inability was an arbitrary assignment oflspercentage of goods and services. Any resulting problem is of their own making and one for which they have to assume responsibility. The trial court after hearing all the testimony and considering the evidence, accepted the audit conducted by the taxing authority.
After a thorough review of the record presented on appeal, we conclude that there is a reasonable factual basis for the finding of the trial court and that the record establishes that the finding is not clearly wrong or manifestly erroneous. Therefore, we adhere to our standard of review and affirm the decision of the trial court.
CONCLUSION
For the reasons assigned herein, the judgment of the trial court is affirmed; all costs of this appeal are to be borne by appellant, Preston J. Albert, Jr.
AFFIRMED.
FOIL, J., dissents.
MCCLENDON, J., dissents and assigns reasons.

. La. R.S. 47:306.1 provides:
Persons, as defined in this Chapter, engaged in the business of transporting passengers or property for hire in interstate or foreign commerce, whether by railroad, railway, automobile, motor truck, boat, ship, aircraft or other means, may, at their option under rules and regulations prescribed by the collector, register as dealers and pay the taxes imposed by R.S. 47:302 A on the basis of the formula hereinafter provided.
Such persons, when properly registered as dealers, may make purchases in this state or import property into this state without payment of the sales or use taxes imposed by R.S. 47:302 A at the time of purchase or importation, provided such purchases or importations are made in strict compliance with the rules and regulations of the collector. Thereafter, on or before the 20th day of the month following the purchase or importation, the dealer shall transmit to the collector, on forms secured by him, returns showing gross purchases and importations of tangible personal property, the cost price of which has not previously been included in a return to the state. The amount of such purchases and importations shall be multiplied by a fraction, the numerator of which is Louisiana mileage operated by the taxpayer and the denominator of which is the total mileage, to obtain the taxable amount of tax basis. This amount shall be multiplied by the tax rate to disclose the tax due. [Emphasis supplied.]

. The parties do not dispute that Tigator and Bayou Kritter operated almost exclusively in interstate commerce. Although the tax periods at issue in the instant case involved the years 1996 through 1998, it is interesting to note that it was established in Tigator, Inc. v. Police Jury of West Baton Rouge Parish, 94-1771 (La.App. 1 Cir. 5/5/95), 657 So.2d 221, writs denied, 95-2126, 95-2172 (La. 11/17/95), 663 So.2d 712, that for the years 1990 through 1992 Bayou Kritter had 100% interstate hauling business and Tigator had between 99.80% and 99.89% interstate hauling business; only between 0.11% and 0.20% of Tigator's business was intrastate. Because the actual sales tax obligation of S & W for sales taxes charged to Tigator and Bayou Kritter was not an issue in the instant lawsuit, no similar testimony was received regarding the percentage of these companies’ interstate hauling business.

. Prior to that time, S & W collected a total of 8% sales tax from Tigator and Bayou Kritter (4% for the State of Louisiana and 4% for West Baton Rouge Parish). After that time, S & W began invoicing Tigator and Bayou Krit-ter for sales tax, which amounted to only 4% of invoice totals. S & W continued to invoice other customers the full 8% in sales tax.

. Mr. Ortego testified they were unable to make the computer software S & W used for invoicing customers calculate different rates on different items within the invoice; i.e., only one tax rate could be applied to the entire invoice. Thus, S & W could not print an invoice that taxed parts at 0% and labor at 8%.

. The three corporations had an agreement that at some later time the exact figures would be determined and any necessary payment or refund would be made between the companies. Nevertheless, sales tax returns in evidence showed 4% sales tax on the gross amount of labor charges was remitted to both the parish and the state.

. There was no dispute among the parties that the percentage of sales tax collected was not stated on the invoices at issue; a dollar amount of tax charged was stated only, and this tax amounted to 4% of the invoice total.

. Although the parish tax collector, J. Roger Bergeron, conceded that if the parts had been sold separately, by a parts retailer for example, no sales tax should have been collected, Mr. Bergeron took the position that once the parts were incorporated into a repair service, the overall object of the transaction was the repair service and that service constituted the classification under which the entire transaction should be evaluated for sales tax purposes. Since the sale of services is not subject to the provisions of La. R.S. 47:306.1, the statute does not excuse the payment of sales tax on services. See International Paper Company v. East Feliciana Parish School Board, 2002-0648 (La.App. 1 Cir. 3/28/03), 850 So.2d 717, writ denied, 2003-1190 (La.6/20/03), 847 So.2d 1235, relative to resolution of this issue in favor of the taxing authority.

. Pursuant to 2003 La. Acts, No. 551 § 1, effective under § 5 to all tax which becomes due on and after July 1, 2003, La. R.S. 33:2845.1 was repealed and re-enacted in substantially the same form in La. R.S. 47:337.46.

. In fact, counsel for defendant/appellant stated to the trial court that no one was "contesting the liability of S & W or the judgment.” DefendanVappellant’s contention is more accurately that the judgment against S & W does not automatically amount to personal liability of the corporate officer, but rather, collection of the tax and willful failure to remit same must be proven as well.

. In brief to this court, plaintiff/appellee listed the elements required to be established by La. R.S. 33:2845.1 as follows: (1) S & W was a corporation; (2) WBRP through its Sales and Use Tax Department is the single sales and use tax collector for all political subdivisions of WBRP; (3) S & W failed to remit sales/use taxes required to be remitted under the ordinances of WBRP; (4) Mr. Albert was an officer or director of S & W; (5) Mr. Albert had direct control or supervision of S & W's taxes or had the responsibility of filing tax returns and remitting taxes; (6) S & W collected from its customers the sales/use taxes at issue; and (7) the failure to remit these taxes was willful. Of these factors, whether the taxes were collected and whether there was a willful failure to remit are the only issues seriously argued in this appeal.